OPINION
{¶ 1} Defendant-appellant, Ricardo E. Jackson ("appellant"), appeals from two judgment entries issued by the Franklin County Court of Common Pleas on May 26, 2006: (1) a corrected judgment entry, which specifically sentenced appellant to three years of post-release control; and (2) a journal entry denying his petition for post-conviction relief. For the following reasons, we affirm. *Page 2 
 {¶ 2} By indictment filed July 13, 2001, appellant was charged with two counts of aggravated arson, in violation of R.C. 2909.02(A), and one count of intimidation of a crime victim or witness, in violation of R.C.2921.04. A jury found appellant guilty of one count of aggravated arson and one count of intimidation. On December 17, 2001, the trial court sentenced appellant to a prison term of five years for each count and ordered those sentences to be served consecutively. A three-year term of post-release control was also mandatory for the aggravated conviction, as a second-degree felony. However, the record reflects no discussion at sentencing concerning post-release control, nor does the trial court's judgment entry refer to or impose a sentence for post-release control.
 {¶ 3} On appeal, in State v. Jackson, Franklin App. No. 02AP-867,2003-Ohio-6183 ("Jackson I"), this court affirmed the aggravated arson conviction, but reversed the intimidation conviction. The court also ordered the trial court to correct the portion of the judgment entry that mistakenly identified the aggravated arson conviction as a first-degree felony, rather than a second-degree felony. On remand, in May 2005, the trial court issued a modified judgment entry in accordance with this court's order. This modified judgment entry does not refer to or impose a sentence for post-release control.
 {¶ 4} On April 10, 2006, plaintiff-appellee, State of Ohio ("appellee"), filed a motion for corrected judgment entry and/or resentencing. Appellee filed the motion in response to the decision of the Ohio Supreme Court in Hernandez v. Kelly, 108 Ohio St.3d 395,2006-Ohio-126, in which the court held that the Ohio Adult Parole Authority ("OAPA") had no authority to impose post-release control where a judgment entry did not refer to post-release control. *Page 3 
 {¶ 5} On May 26, 2006, the trial court held a sentencing hearing, during which the court expressly advised appellant that he would be "responsible to the Adult Parole Authority for three years of mandatory Post-Release Control upon [his] release from imprisonment in July" 2006. (May 26, 2006 Tr. at 9.) The court also issued a corrected judgment entry, which expressly sentenced appellant to three years of post-release control.
 {¶ 6} That same date, the court also issued an entry denying, without a hearing, appellant's petition for post-conviction relief, which appellant had filed on July 17, 2002. The court considered appellant's petition following this court's December 2, 2004 remand for findings of fact and conclusions of law concerning appellant's stated grounds for post-conviction relief, see State v. Jackson, Franklin App. No. 03AP-1065, 2004-Ohio-6438 ("Jackson II"), and failure of service following the trial court's August 12, 2005 denial of appellant's petition.
 {¶ 7} In this appeal, appellant raises the following assignments of error:
 [1.] The trial court erred by imposing a term of postrelease control as appellant neared the end of his five-year prison sentence and the time for appeal or cross-appeal from the original conviction had long expired.
 [2.] The court's attempt to add postrelease control to appellant's sentence violates the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 [3.] The court below erred by not conducting an evidentiary hearing on appellant's petition for postconviction relief.
 {¶ 8} In his first and second assignments of error, appellant argues that the trial court erred by issuing a modified judgment entry that expressly imposed post-release *Page 4 
control upon him. As appellant notes, this is one of many cases reaching this court as a result of similar post-Hernandez modifications by trial courts to impose post-release control sentences.
 {¶ 9} R.C. 2929.14(F) and 2967.28(B)(2) require a trial court to impose a mandatory three-year period of post-release control when an offender is sentenced to a prison term for a second-degree felony that is not a felony sex offense. In addition, R.C. 2929.19(B)(3)(c) requires the trial court to notify the offender at the sentencing hearing that he will be subject to OAPA supervision after serving his sentence for a second-degree felony. Pursuant to these statutory requirements, the Ohio Supreme Court held that, "[w]hen sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence."State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph one of the syllabus. Given this statutory duty, "any sentence imposed without such notification is contrary to law." Id. at ¶ 23. Where a sentence is contrary to law or void because it does not contain a statutorily mandated term, the proper remedy is resentencing. Id., citing State v.Beasley (1984), 14 Ohio St.3d 74.
 {¶ 10} Here, the trial court originally sentenced (and, following this court's remand, resentenced) appellant to a prison term of five years on the aggravated arson charge, a second-degree felony. Thus, the court was required to notify appellant at the sentencing hearing that he was subject to post-release control following his release from prison and to incorporate that notice into its journal entry imposing sentence. Because the trial court failed to so inform appellant and failed to impose post-release *Page 5 
control in its sentencing entry, pursuant to Jordan, the sentence was void and subject to correction via resentencing.
 {¶ 11} Appellant argues, first, that principles of waiver and res judicata bar resentencing. If appellee wanted to modify the sentence, he argues, appellee should have filed an appeal from his original, or even his second, sentencing. However, this court has already addressed, and rejected, such an argument in this context.
 {¶ 12} In State v. Ramey, Franklin App. No. 06AP-245, 2006-Ohio-6429, this court addressed the question whether a trial court could modify a judgment entry to impose a mandatory three-year sentence for post-release control upon a defendant/inmate who was scheduled to be released from prison one day after the modification. In finding that the defendant was properly subject to resentencing, the court expressly rejected the defendant's assertions that the state had either waived the error or that res judicata barred appellee from raising it. The court found:
 "The function and duty of a court is to apply the law as written." Beasley, at 75. As noted in Colegrove v. Burns (1964), 175 Ohio St. 437, "[c]rimes are statutory, as are the penalties therefore, and the only sentence which a trial court may impose is that provided for by statute * * *. A court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that provided for by law." Id. at 438. The state's failure to appeal an illegal sentence does affect the trial court's duty to impose sentence according to law. See State v. Thomas (1996), 111 Ohio App.3d 510, 512 * * * When a trial court enters a void judgment, it retains jurisdiction to correct the void entry. State v. Hinkle, Allen App. No. 1-02-41, 2002-Ohio-5585 * * *. Moreover, where no statutory authority exists to support a judgment, res judicata does not act to bar a trial court from correcting the error. * * *
Id. at ¶ 12. We find the Ramey court's analysis applicable here, and we similarly reject appellant's claim of res judicata. *Page 6 
 {¶ 13} Appellant also argues that Ohio law does not provide for motions for reconsideration of criminal sentencing. Again, this court addressed this very issue in Ramey and concluded: "A trial court's authority to correct a void sentence does not hinge upon how the court became aware of its illegality." Ramey at ¶ 13.
 {¶ 14} Appellant attempts to distinguish Ramey, in which it was undisputed that the trial court had verbally advised the defendant, following his guilty plea, that he would be subject to post-release control, but the court did not include post-release control in the judgment entry. In contrast, appellant argues, "[t]his case involved a jury trial and repeated failures to make postrelease control a part of the sentence." We find, however, that any distinction between the facts of this case and those at issue in Ramey does not make a difference in our conclusion that the court's prior judgment entries were void. As noted above, "[a] court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that provided for by law." Colegrove v. Burns (1964),175 Ohio St. 437, 438. Here, the three-year sentence for post-release control was mandatory, and the trial court's failure to advise appellant — either at the sentencing hearing or in the judgment entry, or both — caused the judgments to be void. As such, the trial court had authority to resentence appellant, and we overrule appellant's first assignment of error.
 {¶ 15} In his second assignment of error, appellant asserts that the resentencing subjects him to double jeopardy in violation of theFifth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution. This court rejected that same argument inRamey, as follows:
 * * * In Beasley, the court expressly held that the trial court, in correcting a statutorily incorrect sentence, does not violate *Page 7 
a defendant's constitutional guarantee against double jeopardy. Id. at 76. In accordance with Beasley, this court held that an invalid sentence may be corrected although the defendant began to serve the invalid sentence. [State v. Bush (Nov. 30, 1999), Franklin App. No. 99AP-4], citing State v. Jones (Mar. 18, 1999), Franklin App. No. 98AP-639. Further, following a review of federal authorities addressing double jeopardy implications in resentencing, the court in State v. McColloch (1991), 78 Ohio App.3d 42, * * * the court concluded that a defendant's commencing to serve his sentence does not negate the holding in Beasley. McColloch, at 44. The court held that "an invalid sentence for which there is no statutory authority is * * * a circumstance under which there can be no expectation of finality" to trigger the protections of the Double Jeopardy Clause. Id. at 46.
Ramey at ¶ 16.
 {¶ 16} Here, the trial court was statutorily required to impose a three-year period of post-release control upon appellant. Neither the original sentencing entry nor the May 2005 resentencing entry included the imposition of post-release control; therefore, they were void. Because jeopardy did not attach to the void sentence, the trial court did not violate appellant's constitutional guarantee against double jeopardy by correcting the sentence. Accordingly, we overrule appellant's second assignment of error.
 {¶ 17} In his third assignment of error, appellant asserts that the court erred by not conducting an evidentiary hearing on appellant's petition for post-conviction relief. In this appeal, only one issue remains for our consideration: whether the trial court should have conducted an evidentiary hearing on appellant's claim that he received ineffective assistance of counsel because his trial counsel did not secure an independent arson investigator and did not obtain a recording of the 911 emergency call made by Sheila Gardner. *Page 8 
 {¶ 18} Appellant's right to post-conviction relief arises from R.C.2953.21(A)(1), which provides:
 Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 19} The post-conviction relief process is a collateral civil attack on a criminal judgment, not an appeal of the judgment. State v.Steffen (1994), 70 Ohio St.3d 399, 410. It is a means to reach constitutional issues that would otherwise be impossible to reach because the trial court record does not contain evidence supporting those issues. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. Appellant does not have a constitutional right of post-conviction review. Rather, post-conviction relief is a narrow remedy that affords appellant no rights beyond those granted by statute.State v. Calhoun (1999), 86 Ohio St.3d 279, 281. A post-conviction petition does not provide appellant a second opportunity to litigate his conviction. State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321.
 {¶ 20} A petitioner seeking post-conviction relief is not automatically entitled to an evidentiary hearing. Calhoun at 282. The trial court "shall determine whether there are substantive grounds for relief" before granting a hearing on a post-conviction petition. R.C.2953.21(C). Pursuant to R.C. 2953.21(C), a trial court properly denies a post-conviction petition without an evidentiary hearing if the petition, supporting documents, *Page 9 
and court record "do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."Calhoun at 291.
 {¶ 21} A trial court may also dismiss a petition for post-conviction relief without holding an evidentiary hearing when the doctrine of res judicata bars the claims raised in the petition. State v. Szefcyk
(1996), 77 Ohio St.3d 93. "Res judicata is applicable in all postconviction relief proceedings." Id. at 95. Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for post-conviction relief if the defendant raised or could have raised the issue at trial or on direct appeal. Id., syllabus. State v. Reynolds (1997), 79 Ohio St.3d 158, 161. For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of the trial. State v. Cole (1982), 2 Ohio St.3d 112, syllabus; State v. Lawson (1995), 103 Ohio App.3d 307, 315.
 {¶ 22} We apply an abuse of discretion standard when reviewing a trial court's decision to deny a post-conviction petition without a hearing.State v. Campbell, Franklin App. No. 03AP-147, 2003-Ohio-6305, citingCalhoun at 284. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Here, appellant contends that the court abused its discretion as he set forth sufficient operative facts to support his ineffective assistance of counsel claims, thereby warranting an evidentiary hearing. The United States Supreme Court has *Page 10 
established a two-prong test for ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. Moreover, a defendant must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995), 72 Ohio St.3d 545,558.
 {¶ 24} Appellant argues, first, that his counsel was ineffective for failing to hire an independent arson investigator. In his petition, appellant asserted that such an investigator "would have been able to take a sample of the burnt deck and have laboratory tests performed to determine whether an accelerant was the cause of the fire." Appellant had made the same assertion during sentencing proceedings before the trial court on December 18, 2001. On that date, his attorney responded:
 * * * We have consulted with experts. Our experts would help the State more than [appellant], so we chose not to retain them. We contacted fire experts, we read them reports. They have been out to the scene personally, have taken digital pictures of the fire, have provided those to [appellant]. We had those available, as well as we copied all of the photographs.
(Dec. 18, 2001 Tr. at 9.)
 {¶ 25} Appellant countered that he was only aware of one expert who had been contacted. Appellant's counsel appeared to acquiesce in appellant's account of contacts with this individual. (Dec. 18, 2001 Tr. at 10.) We also note that, throughout this case's history, appellant has repeatedly challenged his counsel's alleged contact with an arson investigator. *Page 11 
 {¶ 26} In any event, this court has already addressed this alleged error, as appellant raised it in his initial appeal. See Jackson I
at ¶ 76. There, this court concluded that appellant had failed to show that his counsel was ineffective for failing to obtain the testimony of an independent fire investigator. As we noted then, "the failure to call an expert witness and instead rely on cross-examination of the state's expert witness does not constitute ineffective assistance of counsel." Id. And, here, "counsel was not able to retain a favorable expert to testify and, instead, chose to rely on cross-examination of the state's expert witness. We cannot say that strategy was unreasonable." Id.
 {¶ 27} In this appeal, appellant has presented no competent, relevant, and material evidence outside the trial court record on this issue, nor has he presented evidence that did not exist or was not available for use at the time of the trial. Instead, he presents only his own affidavit, which states, in pertinent part:
 2) Prior to the beginning of my trial, I asked my defense attorneys to hire an independent arson investigator. * * *
 3) My attorneys did not hire an independent arson investigator to review my case. Had an independent arson investigator been hired, I truthfully believe that the investigator would have concluded that I did not maliciously cause a fire to burn the wooden deck of my home.
 {¶ 28} Appellant's self-serving statements are not material evidence supporting his claim of ineffectiveness on this basis. Therefore, the doctrine of res judicata barred consideration of this claim, and the trial court did not abuse its discretion in finding no operative facts to support an evidentiary hearing.
 {¶ 29} Appellant argues, second, that his counsel was ineffective for failing to obtain a recording of the 911 call made by the victim. Appellant attached to his petition *Page 12 
a document that he purports to be a transcript of that 911 call. The transcript includes a statement by the caller that "he grilled and he started a fire in the place below." Appellant asserts that this statement is inconsistent with the victim's testimony at trial that the deck did not have a hole burned into it when she left to call police. In addition, appellant asserts, the recording would have contradicted the testimony of the state's witness, who testified that the fire was intentionally set and burned in about 30 minutes.
 {¶ 30} The trial court concluded that the transcript is not favorable to appellant, and we agree. The transcript includes the following statements by the caller:
 [CALLER]: * * * [H]e is threatening to hit if I can't pay on his ________ [sic], he grilled and he started a fire in the place below. I believe there is a warrant out for his arrest from domestic violence from before.
 * * *
 [CALLER]: Last weekend he stole my car, and he went into his job on Monday and said he had an alcohol problem or something else.
 * * *
 [DISPATCHER]: Were any guns or knives involved?
 [CALLER]: Um, they are there — he keeps threatening I don't know it there's `one actually there or not. He keeps threatening with one.
 {¶ 31} Even assuming this is an accurate transcript of the call, it does not present evidence that the fire was accidental, nor does it present evidence helpful to appellant. While appellant asserts that a recording of the 911 call could have been used to impeach witness testimony, we agree with the trial court that the recording also might have enflamed the jury against appellant. Even without the recording, defense counsel was able to conduct extensive cross-examination. Under these circumstances, we *Page 13 
cannot conclude that appellant was prejudiced by the absence of this evidence at trial. Thus, the trial court did not abuse its discretion in determining that evidence of any failure to obtain a recording of the 911 call did not present operative facts sufficient to support an evidentiary hearing to determine his counsel's competence.
 {¶ 32} Having concluded that the trial court did not err in denying appellant's petition without a hearing, we overrule appellant's third assignment of error.
 {¶ 33} For these reasons, we overrule appellant's first, second, and third assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 SADLER, P.J., and BROWN, J., concur. *Page 1